**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CIVIL ACTION NO. 4:11-CV-4279**


24 HOUR FITNESS USA, INC.,
a California Corporation dba
24 HOUR FITNESSS

    Petitioner

vs.

RODERICK BOYD,

    Respondent

_____/

**<u>RESPONSE OF RODERICK BOYD OPPOSING PETITION TO COMPEL
ARBITRATION; ALTERNATIVELY, REQUEST TO STAY ENTIRE ACTION
PENDING RULING ON SAME ISSUE IN EARLIER-FILED CASE PENDING IN THE
NORTHERN DISTRICT OF CALIFORNIA</u>**

1.  **<u>Introduction.</u>**

  Respondent RODERICK BOYD ("Boyd" or "Respondent") hereby opposes Petitioner 24 Hour Fitness USA, Inc.'s ("24 Hour" or "Petitioner") Petition.  The Petition should be denied and dismissed on several grounds.  First and foremost, Respondent has not refused to arbitrate and therefore the petition fails.  Second, the Petition should be denied because the Fifth Circuit Court of Appeals, applying Texas Law, has already found that 24 Hour's common inclusion of its arbitration agreements in the company handbook makes the agreement illusory, because the handbook allows 24 Hour to unilaterally amend the agreement and apply those changes retroactively (as 24 Hour has attempted to do in these arbitrations with its employees), and it is therefore unenforceable by 24 Hour.  *See Carey v. 24 Hour Fitness, USA, Inc.* 2012 U.S. App. LEXIS 1339, Case No. 10-20845 (5th Cir. Jan 25, 2012).  Third, this petition must fail in favor of a currently pending earlier-filed petition to compel arbitration filed by Respondent in federal court in the Northern District of California, which earlier-filed petition has already been fully briefed, argued and is currently under submission awaiting a ruling by the Hon. Samuel Conti.

The Honorable Conti will adopt rulings of a special master; "[t]he Special Master shall assist [Honorable Conti] with matters such as:

> determining whether a particular person is covered by an arbitration agreement; if so, determining which arbitration agreement applies; determining whether the terms of the arbitration agreement are enforceable; determining where and before whom arbitration shall occur, if at all; determining the order in which cases shall be arbitrated; resolving motions now pending before this Court, as well as future motions; determining any issue of law or fact necessary to discharging the foregoing duties, subject to review as provided in paragraphs 15 through 19; and other matters in which the Court wishes to utilize his services.  Declaration of Richard E. Donahoo (Donahoo Decl.,) ¶ 5, Exhibit U.

If the Petition is not denied and dismissed, it should be stayed pending the ruling from the Northern District of California.  Respondent seeks the relief on the following grounds:

1. This is a retaliatory filing, occurring years after Respondent became a Plaintiff in a collective action alleging Fair Labor Standards Act ("FLSA") violations against 24 Hour (and its related entity Sport and Fitness Clubs of America, Inc.), filed in the Northern District of California.  This case was assigned to the Honorable Samuel Conti, and styled *Beauperthuy et al v. 24 Hour Fitness et al*, USDC NDCal 06-0715 SC, filed on February 1, 2006 ("*Beauperthuy*").  Donahoo Decl., ¶ 1.  After *Beauperthuy* was decertified, Respondent timely filed and served upon 24 Hour a demand and claim for arbitration in the Northern District of California, which District is where 24 Hour's national headquarters is located.  Donahoo Decl., ¶¶ 2, 5.  24 Hour refused to arbitrate in the Northern District of California.  Donahoo Decl., ¶ 2.  The instant case was filed by 24 Hour *after* Respondent filed a Petition to Compel Arbitration against 24 Hour in the Northern District of California (where 24 Hour is headquartered) in a case styled *Roderick C. Boyd v. 24 Hour Fitness USA, Inc*., USDC ND Cal 11-cv-5992 SC.  Donahoo Decl., ¶ 5.  That case, along with 272 other individual Petitions, were all filed on December 5, 2011, have been ordered related and are also assigned to Judge Conti ("Related ND Cal Petitions").  Donahoo Decl., ¶ 5.  Moreover, the responses, oppositions, and replies to those Petitions have been fully briefed and argued as of January 9, 2012.  On February 27,

2012, Judge Conti appointed Special Master, Hon. James Larson (Ret.) to issue rulings and make recommendations to Judge Conti.  Donahoo Decl., ¶ 5.

2.  Also presently pending against 24 Hour in the Related ND Cal Petitions is a Motion for Preliminary Injunction/TRO to enjoin 24 Hour's prosecution of this action (and the additional Petitions it filed across the country against most of the 273 opt-in Plaintiffs who filed Petitions against 24 Hour) on the basis of the first-filed-case doctrine,[1] and equitable principles.  In response, 24 Hour recently filed an omnibus motion to transfer the Related ND Cal Petitions.  On February 23, 2012 Judge Conti appointed the Special Master over all motions, disputes and make reports and recommendations to the Court.  Donahoo Decl., ¶¶ 5-7.  On February 27, 2012 Judge Conti Ordered the appointment of a Special Master.  Donahoo Decl., ¶ 5, Exhibit U.

3.  During his six year management of the claims against 24 Hour, Judge Conti has issued numerous procedural rulings and is most familiar with the issues, including whether arbitration of claims under the 2001 agreement should be arbitrated in the Northern District (they should) whether there has been substantial compliance with the arbitration agreement (there has), whether 24 Hour has waived its right to arbitrate (it has), and on equitable tolling of the employees' claims (they are).  Now, with 24 Hour's filing of the additional hundreds of petitions across at least 21 district the United States Judge Conti has appointed a Special Master to address all motions, including whether Respondents first-filed motion should be granted and whether this petition should be stayed.  Donahoo Decl., ¶ 8.

4.  24 Hour has no affirmative claims against Respondent (the FLSA provides only claims by employees against employers).

5.  Respondent has not refused to arbitrate.  To the contrary, Respondent submitted a demand and claim for arbitration against 24 Hour in March 2011, well prior to 24 Hour filing the

---

[1] As set forth in Mr. Donahoo's Declaration, all 273 of the Related ND Cal Petitions were filed on December 5, 2011 and all of 24 Hour's out-of-state Petitions, including this one, were filed on December 6, 2011 and later.

Petition in this case, and Respondent also filed a lawsuit on December 5, 2011 in the Northern District of California to compel 24 Hour to arbitrate her wage and hour claims. And, contrary to 24 Hour's statements in its Petition, Respondent *has* provided a list of proposed arbitrators to 24 Hour.   Donahoo Decl., ¶ 3, Exh. A.   24 Hour has refused to arbitrate except on its terms, which include proceeding in the Southern District of Texas. On December 2, 2011 Judge Conti ruled in a related case that such conduct by 24 Hour is a refusal to arbitrate by 24 Hour.   Donahoo Decl., ¶ 10. Because Petitioner fails in proving that Respondent refused to arbitrate, Petitioner lacks standing to bring this Petition.

6.   As part of its self-declared war on its former and current employees (see Donahoo Decl., ¶ 5, Exh. C (24 Hour's counsel declaring a venue "war")) who sought to arbitrate their claims against 24 Hour, 24 Hour has filed over 300 competing Petitions to Compel Arbitration against its former employees, which Petitions are identical to this one.[2]  The largest group, 51 of them, were filed in the Western District of Washington, where they have all been transferred to a single Judge.   That Court recently issued an order to show cause for 24 Hour's failure to properly plead jurisdiction and because 24 Hour had not properly pleaded a failure, refusal or neglect to arbitrate.   24 Hour responded by claiming that Judge Conti's ruling in the Northern District of California granting motions to compel arbitration against 24 Hour filed by 16 named plaintiffs in *Beauperthuy*, supported 24 Hour's position that 24 Hour now had standing to Petition to Compel arbitration against its employees in other Districts around the Country.   The Western District of Washington

---

[2] 24 Hour contends that there are five different amended versions of its arbitration agreement that are applicable, depending upon when the employee's employment ended.  The fact that 24 Hour wants to retroactively apply a unilaterally amended arbitration agreement to claims which arose while a prior version was in effect is the subject of Respondents' arguments regarding unenforceability of the arbitration agreement.  The Fifth Circuit Court of Appeals recently ruled that 24 Hour's 2005 version of its Arbitration policy is unenforceable because the unilateral power to amend and apply that amendment retroactive renders it illusory.  See Exh. I, *Carey v. 24 Hour Fitness, USA, Inc.* Case No. 10-20845 (5th Cir. Jan 25, 2012).  Although only the 2005 version was at issue in *Carey*, 24 Hour retains the ability to unilaterally modify all of its arbitration agreements.   Thus, the various non-California Petitions are slightly modified, depending upon which agreement 24 Hour is contending applies.  In all other respects, they are substantively identical.  Donahoo Decl., ¶ 10, subparagraph (u).

4

disagreed, rejecting that argument and ordering that 24 Hour must amend its Petitions to properly allege jurisdiction or face having them dismissed.  In its Order Re: Jurisdiction, the Court found that:

> "By filing a petition to compel arbitration in this district [W.D. Washington], petitioner [24 Hour] has threatened to create the exact situation of paralysis to which Judge Conti's remonstration was directed." Donahoo Decl., ¶ 10, subparagraphs (ii) – (kk), Exh. L, Washington Order 3:15-16.

As a consequence, 24 Hour's Petition should be denied and dismissed or stayed pending Judge Conti's rulings.  If not stayed, Respondent should be permitted time to do discovery to develop a factual record to support the contention that 24 Hour may not enforce this version of its arbitration agreement, pursuant to the holding in *Carey v. 24 Hour Fitness, USA, Inc.,* 2012 U.S. App. LEXIS 1339, Case No. 10-20845 (5th Cir. Jan 25, 2012).

## 2.    Facts.

### A.    Summary timeline of procedural history of Respondents' Attempts to have FLSA claims against 24 Hour Resolved.[3]

- October 29, 2003: a putative national collective action alleging FLSA violations on behalf of Managers, Personal Trainers and others was filed against Defendant in the Southern District of California styled *Boyce et al v. Sports and Fitness Clubs of America, et al.*, 03-CV02140 BEN (which would ultimately come to be a consolidation of one federal and six state court actions alleging national FLSA claims and California State wage and hour claims, filed between December 31, 2002 and September 8, 2004) ("*Boyce*").  Donahoo Decl., ¶ 9, Exh. E, Order Granting In

---

[3] The timeline in this section is set forth in Mr. Donahoo's Declaration at paragraph 10.  The most relevant documents and documents that are not available on PACER are attached to Mr. Donahoo's declaration as exhibits.  Otherwise, the citations are to documents presently available on PACER, or are facts that are otherwise supported by Mr. Donahoo.

Part and Denying In Part Plaintiffs' Motion for Facilitated Notice Pursuant to 29 U.S.C. § 216(b) dated 03/06/07, Doc[4] 124 at p. 2-3 ("Manager Certification Order"). Respondent would qualify as a member of that collective FLSA action brought initially on behalf of claimants on a nationwide basis;

- June 4, 2004: 24 Hour filed a motion for an Order requiring an amendment of the pleadings to "exclude reference to representation of unnamed class members who are parties to arbitration agreements" in *Boyce*. *Boyce* Doc[5] 20. In support of that motion, it filed the Declaration of William D. Prescott, Senior Director of Corporate and Field Human Resources. Doc 9 ("Prescott Decl.")[6]. Mr. Prescott recited from and attached as Exhibit A an arbitration agreement dated 2001 ("2001 agreement"), that, pursuant to which, in his words, "24 Hour Fitness agrees to 'pay the fee for the arbitration proceeding." Prescott Decl. ¶ 3. Mr. Prescott declared that all employees employed through "the present" (at that time June 4, 2004) were bound to the arbitration agreement. Prescott Decl., ¶ 7. The 2001 arbitration agreement does not include *any* venue provision. Respondent qualifies as one of those employees whose claims are subject to the 2001 arbitration agreement. Donahoo Decl., ¶ 10, subparagraph (b) and Exh. G;

- January 24, 2006: the *Boyce* action was settled for all California-employed Claimants for California wage claims and FLSA claims. However, the FLSA claims for non-California employees, including Respondent, were abandoned. Donahoo Decl., ¶ 10, subparagraph (c) Exh. E, Doc 124 at p. 6-7;

- February 1, 2006: the *Beauperthuy* case was filed in the Northern District of California alleging claims under the FLSA for all non-California employees—in

---

[4] Because the *Beauperthuy* Docket contains nearly 500 entries, the term "Doc" as used herein refers to the document numbers in that case. The term "Instant Doc" refers to document numbers filed in the present case.

[5] The term "*Boyce* Doc" refers to the document number for the *Boyce* case.

[6] The Prescott Declaration is attached to the Donahoo Decl., as Exhibit G. Donahoo Decl., ¶¶ 10(b), 13, Exhibit G.

other words, the claims, including Respondent's, that were <u>abandoned</u> in the *Boyce* settlement.  Doc 1.  24 Hour Fitness, headquartered in the Northern District, did not contest venue.  The *Beauperthuy* case was assigned to Judge Samuel Conti. Donahoo Decl., ¶ 10, subparagraph (d);

- <u>November 28, 2006</u>: Judge Conti, in his Order Denying Defendants' Motion to Require Amendment of Pleadings by Plaintiffs, finds, <u>that</u>: "The Court, therefore, in the interest of justice and efficient resolution of the parties' disputes hereby finds that Defendants have waived their right to compel arbitration and are thus *barred from making any arguments on the basis of such a right.*"  Donahoo Decl., Exh. F, Doc 66, 9:14-18 (emphasis added).

- <u>March 6, 2007</u>: Judge Conti granted conditional certification of a Managers Class, equitably tolling the claims period, to the <u>Boyce</u> Managers Class claims period, back to December 31, 1998. Donahoo Decl., Exh. E, Doc 124 at p. 16-19;

- <u>March 24, 2008</u>: Judge Conti granted conditional certification for a Personal Trainers Class, equitably tolling the claims period, to the *Boyce* Personal Trainers Class claims period, to October 29, 1999.  Donahoo Decl., ¶ 10, subparagraph (g), Doc 190 at p.13-16;

- <u>July 17, 2009</u>:  Plaintiffs, including Respondent, file a Motion to Compel Production of documents filed against 24 Hour. Doc 284 Donahoo Decl., ¶ 10, subparagraph (h);

- <u>August 21, 2009</u>:  Plaintiffs, including Respondent, file Motion for Summary Judgment No. 1 (re Managers).  Donahoo Decl., ¶ 10, subparagraph (i), Doc 295;

- <u>August 21, 2009</u>:  Plaintiffs, including Respondent, file Motion for Summary Judgment No. 2 (re Trainers).  Donahoo Decl., ¶ 10, subparagraph (j), Doc 297;

- <u>September 24, 2010</u>:  Motion to Decertify Trainer Class filed by 24 Hour against Plaintiffs, including Respondent.  Donahoo Decl., ¶ 10, subparagraph (k), Doc 362;

- <u>September 24, 2010</u>:  Motion to Decertify Manager Class filed by 24 Hour against Plaintiffs, including Respondent.  Donahoo Decl., ¶ 10, subparagraph (l), Doc 371;

- <u>February 24, 2011</u>: Judge Conti issued an Order Decertifying both classes, based in part on 24 Hour's representation that individual arbitration exists and that it would individually arbitrate the claims.  The Court equitably tolled the opt-in members' claims, including Respondent's, an additional 30 days to allow them to file their demands for arbitration.  Donahoo Decl., ¶ 10, subparagraph (m), Doc 428, at 41;

- <u>March 21–24, 2011</u>: 983 Plaintiffs (remaining named Plaintiffs, and former Opt-in Plaintiffs, including Respondent,) served 24 Hour Fitness and submitted to JAMS in the Northern District individual Demand and Claims for arbitration.   24 Hour's counsel expressly agreed to accept service of the Demand and Claims.  Donahoo Decl., ¶ 10, subparagraph (n);

- <u>March - April, 2011</u>: 24 Hour refused to arbitrate <u>any</u> arbitrations in the Northern District, for the first time claiming that new arbitration provisions apply for 2005 and 2007 that require arbitration not in the judicial district where the case was filed (San Francisco, California) and where the Plaintiffs submitted the dispute to arbitration. Donahoo Decl., ¶ 10, subparagraph (o);

- <u>April 25, 2011</u>:  Plaintiffs file a Motion to Compel Arbitration  as to all 983 claimants (Doc 432) which is continued by stipulation as the parties continued to meet and confer regarding proceeding with arbitrations.   Donahoo Decl., ¶ 10, subparagraph (p), Docs 446-448;

- <u>October 14, 2011</u>.  Plaintiffs amend the motion (Doc 449) to apply solely to 16 individuals who were named plaintiffs in this action and who were subject to the 2001 Arbitration provision and seeking to compel arbitration in the Northern District.  Donahoo Decl., ¶ 10, subparagraph (q);

- <u>November 8, 2011</u>:  24 Hour opposes the Motion to Compel Arbitration on the grounds that: (1) there was no refusal to arbitrate and thus Plaintiffs lacked standing

to seek an order compelling arbitration; (2) Plaintiffs' arbitration demands were not timely nor compliant and thus because of their "breach" of the arbitration agreement, could not enforce it against 24 Hour; and (3) that because Plaintiffs had demanded arbitration, they had "effectively withdrawn" from the *Beauperthuy* case—In other words, Plaintiffs can't require arbitration, nor can they pursue any court litigation against 24 Hour.  Donahoo Decl., ¶ 10, subparagraph (r), Doc 452;

- December 2, 2011: Judge Conti granted the 16 named Plaintiffs' motion to compel, holding (1) that 24 Hour had refused to arbitrate and therefore the 16 arbitrations under the 2001 provision, which does not include a venue clause, shall go forward in the Northern District, (2) that the named Plaintiffs had not "effectively withdrawn" from the *Beauperthy* case, (3) that the Demand and Claims submitted to 24 Hour on March 21-24 demonstrated substantial and timely compliance with its Decertification Order, and (4) ordered the parties to meet and confer regarding the arbitration service  in the Northern District that will service the arbitrations and to inform the Court when and where the arbitrations will take place within 30 days. Donahoo Decl., ¶ 10, subparagraph (s), Exh. H, Doc 457:12;

- December 5, 2011:  Plaintiffs, including Respondent herein, who have the exact same factual circumstances as the named plaintiffs who prevailed in the motion to compel filed the 273 individual Petitions to Compel Arbitration against 24 Hour in the Northern District of California and subsequently served 24 Hour's agent for service of process with all Petitions, Summonses and associated documents. Donahoo Decl., ¶ 10, subparagraph (t);

- December 6, 2011-Present:   24 Hour filed over 300 of Petitions to Compel Arbitration against it former employees (including Respondent) in 21 Districts across country (except in ND Cal).  Donahoo Decl., ¶ 10, subparagraph (u);

- December 9, 2001-Present:  24 Hour delivers the out-of-state petitions it files to Plaintiffs' counsel's offices, despite the fact that Plaintiffs' counsel informs them

that Plaintiffs have not authorized them to accept service on their behalf and that Plaintiffs, including Respondent, have not waived service of process. Donahoo Decl., ¶ 10, subparagraph (v);

- December 15, 2011:  Plaintiffs file a motion to Relate the 273 ND Cal Petitions, which 24 Hour opposes.  Donahoo Decl., ¶ 10, subparagraph (w), Doc 461.  ;

- December 15, 2011:  Plaintiffs file a Motion for Preliminary Injunction seeking to enjoin 24 Hour's prosecution of the out-of-jurisdiction cases (its retaliatory Petitions, including this one) and a request for a Hearing on the 273 ND Cal Petitions. Donahoo Decl., ¶ 10, subparagraph (x), Doc 463;

- December 19, 2011: Judge Conti Orders the 273 Related ND Cal Petitions, including Respondent's Petition, related to *Beauperthuy* and they are subsequently all transferred to him.  Donahoo Decl., ¶ 10, subparagraph (y), Doc 468;

- December 20, 2011:  Judge Conti sets a briefing schedule for the Preliminary Injunction and for a hearing on the 273 Related ND Cal Petitions, setting the hearing for January 9, 2012.  Donahoo Decl., ¶ 10, subparagraph (z), Doc 472;

- December 30, 2011:  24 Hour files a notice of appeal on Judge Conti's December 2, 2011 Order granting the Motion to Compel Arbitration.  Donahoo Decl., ¶ 10, subparagraph (aa), Doc 475;

- January 9, 2012:  at the Hearing on the Preliminary Injunction and 273 Related ND Cal Petitions, Judge Conti indicates his intent that a Special Master will be appointed, and that he will rule on the Preliminary Injunction, the 273 Related Petitions and 24 Hour's Motion to Transfer after the motion is fully briefed. Donahoo Decl., ¶ 10, subparagraph (bb);

- January 12, 2012: the Western District of Washington (where 24 Hour has filed the most Petitions (51)) issues an Order to Show Cause re: Jurisdiction in *24 Hour v. Austin*, USDC WDWA Case No. C11-2027RSM ("WDWA -- *Austin*"), that is applicable to all of the WD Washington Petitions filed by 24 Hour, as to why all of

the Petitions should not be dismissed for lack of jurisdiction and because the cases, as pleaded by 24 Hour show that its employees have not failed, refused, or neglected to arbitrate.  Indeed, they have affirmatively sought arbitration against 24 Hour since March 2011.  Donahoo Decl., ¶ 10, subparagraph (ii), Exh. J, WDWA – *Austin* Doc 5.

- January 23, 2012: 24 Hour files its omnibus motion to transfer most of the Petitions, which motion is set for hearing February 24, 2012.  Doc 488.  Donahoo Decl., ¶ 10, subparagraph (cc);

- January 23, 2012: 24 Hour and Plaintiffs file proposed orders and briefs regarding the appointment of a Special Master.  Donahoo Decl., ¶ 10, subparagraph (dd);

- January 25, 2012: the Fifth Circuit Court of Appeals affirms the Texas District Court's opinion that 24 Hour's 2005 version of its arbitration agreement is unenforceable because the ability of 24 Hour to unilaterally amend the arbitration provisions terms and seek to apply them retroactively renders the arbitration provision illusory.  Donahoo Decl., ¶ 10, subparagraph (ee), Exh. I, *Carey v. 24 Hour Fitness, USA, Inc.* Case No. 10-20845 (5th Cir. Jan 25, 2012);

- February 1, 2012: 24 Hour files a Response to the Western District of Washington's OSC re Jurisdiction, claiming that Judge Conti's ruling in the Northern District of California granting motions to compel arbitration against 24 Hour filed by 16 named plaintiffs in *Beauperthuy*, supported 24 Hour's position in the non-California Petitions that 24 Hour now had standing to Petition to Compel arbitration in other Districts around the Country against its former employees.   Donahoo Decl., ¶ 10, subparagraph (jj), Exh. K, WDWA – *Austin* Doc 6 fn2.

- February 6, 2012:  Judge Conti schedules a Status Conference for February 22, 2012.  Donahoo Decl., ¶ 10, subparagraph (ff);

- February 6, 2012: Plaintiffs (including Respondent herein) oppose 24 Hour's transfer motion, on a number of grounds, including that 24 Hour provides no

admissible evidence that any of the transfer factors are met.  Donahoo Decl., ¶ 10, subparagraph (gg), Doc 498.

- February 7, 2012:   The Western District of Washington issues its Order re: Jurisdiction ("WD Washington Order") in *24 Hour Fitness USA, Inc. v. Shelly Gorden*, C11-2039RSM (W.D. Wash. 2012) ("WDWA – *Gorden*").  The Western District of Washington rejected 24 Hour's argument, and ordered that 24 Hour must amend all of its WD Washington Petitions to properly allege jurisdiction or face having them dismissed.  Donahoo Decl., ¶ 10, subparagraph (kk), Exh. L, WDWA – *Gorden* Doc 6.

- February 22, 2012:   Judge Conti appoints Hon. James Larson (Ret.), a former federal magistrate, as Special Master to preside "over all motions, disputes and make reports and recommendations to the Court."  Doc 501.

- February 27, 2012:       Judge Conti issues an Order Appointing Hon. James Larson to assist the court with multiple matters, including but not limited to determining whether a particular person is covered by an arbitration agreement; if so, determining which arbitration agreement applies; determining whether the terms of the arbitration agreement are enforceable; determining where and before whom arbitration shall occur, if at all; determining the order in which cases shall be arbitrated. Donahoo Decl., ¶5-7, Exhibit U.

**B.    The Summary of the Above, Plus Additional Facts Related to the Instant Petition Show That Arbitration Should Not Proceed Here.**

As the docket in *Beauperthuy* indicates, Judge Conti has had extensive experience in his management of Plaintiffs' claims, including Respondent's here, and has just recently appointed a Special Master to address the issues presented.  And, there are numerous additional disputed law and motion filings in addition to those highlighted above.

In sum, the claims against 24 Hour have been actively litigated since their inception, including dozens of depositions taken (between 40 and 50) interrogatories propounded, hundreds of thousands of documents produced, millions of electronic records produced, discovery orders issued, two motions for conditional certification, two motions for summary judgment, and two motions for decertification—during which time the Court in *Beauperthuy* became well-acquainted with the issues, and made numerous procedural rulings.  Donahoo Decl., ¶ 11.

As noted in the timeline provided in paragraph 10 of Mr. Donahoo's Declaration, on February 24, 2011, the Court decertified the collective case, holding that the Plaintiffs were free to pursue arbitration against 24 Hour.  On March 21-24, 2011 Plaintiffs, including Respondent here, timely submitted Demands for Arbitration on 24 Hour, and submitted copies of those Demands  to an arbitration service in the Northern District of California (Judicial Arbitration and Mediation Service, "JAMS").   24 Hour responded by refusing to arbitrate in the Northern District of California.   Under a threat of a motion to compel arbitration filed by Plaintiffs, including Respondent here, the parties' counsel met and conferred in an attempt to resolve the outstanding issues.  Those discussions broke down and ultimately, the existing named Plaintiffs who were subject to the 2001 Arbitration agreement with 24 Hour, had their motion to compel arbitration heard, and underline granted by the Court on Friday December 2, 2011.  On Monday, December 5, 2011, the 273 opt-in members of *Beauperthuy*, including Respondent, filed individual Petitions to Compel Arbitration with the District Court for the Northern District of California. Presently pending is the Preliminary Injunction that (1) seeks to enjoin 24 Hour from prosecuting the out-of-jurisdiction cases all filed after December 5, 2011, including this one, and enjoining it from filing anymore, and (2) seeks associated Orders giving notice to the other federal courts, including this one of the pendency of the previously filed Petitions to compel arbitration. 24 Hour has filed in excess of 200 duplicative Petitions in 20 other Districts. Each of the Related ND Cal Petitions are identical and seek to compel arbitration in the Northern District for the individuals who were covered by 24 Hour's 2001 Arbitration Agreement; each of the out-of-

jurisdiction cases are identical Petitions, including this one, and seek orders compelling arbitration in their Districts.

As recounted in Judge Conti's rulings granting conditional certification to the Managers' class (Doc 124) (Exh. E) and denying Defendants' motion to require amendment of pleadings (Doc 66) (Exh. F), the Related ND Cal Petitions arise from the *Boyce* litigation commenced in 2003, the *Allen* attempted arbitration in 2004, and the *Beauperthuy* collective action case commenced six years ago in February 2006.   Those cases concern the unpaid wages for Managers and Personal Trainers for work performed outside of California from December 31, 1998 to the present.  Through a series of procedural skirmishes and shifting positions with regard to arbitration, 24 Hour has successfully avoided substantive resolution of the claims of over 900 workers.  To the extent that any worker has seen any recovery, it was in the *Boyce* litigation in 2005, which settled for California-based work only.   In addition, certain of the individuals in *Allen,* who exercised their rights under Rule 23 to "opt-out" of *Boyce,* actually commenced five arbitrations  in California, but, those settled before an Award was entered for a confidential amount. However, none of the *Beauperthuy* claimants (which derive from *Allen*), including Respondent, have had any substantive resolution of their claims against 24 Hour.   Donahoo Decl., ¶ 12.

And, this is specifically because of the manner in which Defendants have used a combination of arbitration and law and motion to avoid it.  As Judge Conti found years go: "in the interests of justice and efficient resolution of the parties' disputes [the Court] hereby finds that Defendants have waived their right to compel arbitration and are thus barred from making any arguments on the basis of such a right." Exh. F, Doc 66, 8:23-9:4, 9:11-18.  Judge Conti went on to find that "Plaintiffs have repeatedly requested that Defendants arbitrate their dispute [;] Defendants accepted once, only to soon thereafter stymie the process…." and that:

> Plaintiffs have been forced to deal with defendants' confusing, contradictory, and time-consuming strategic maneuvering purportedly based on the [2001] Arbitration Agreement but which involve simultaneous explicit refusals to compel arbitration.  The unnecessary delay and expense this has caused has affected not

only Plaintiffs but also the various courts and arbitration institutions which have been involved. Exh. F, Doc 66, 9:27-10:4, 10:18-25.

There is a reason why 24 Hour has filed hundreds of competing cases against its former employees, including this case against Respondent, because it is concerned that if arbitration proceeds in the Northern District of California, it will proceed quickly and efficiently to resolution. Instead, if 24 hour can persuade this Court to proceed with this Petition, it can take advantage of the subsequent delay to further push back substantive resolution. Moreover, it will be able to reargue issues already decided by Judge Conti, in terms of equitable tolling and substantial compliance, which, if they get even one Court or Arbitrator to reevaluate and enter a ruling different from Judge Conti's rulings, is a procedural "win" for 24 Hour, and another way to avoid or delay resolution of that claimants' claims, including Respondent's claims. To be clear, it is understandable why a defendant, that has no affirmative claims, would have no interest in moving quickly to a resolution that can only result in a net payout. But, at a certain point—here, nearly 9 years (*Boyce*) or 8 years (*Allen*) or 6 years (*Beauperthuy*)—those efforts must be curtailed. Judge Conti recognized this during the hearing on January 9, 2012, when he stated:

> … this case has been going on about, I guess around about six years, and it should come to a conclusion. I'm going to do everything I can to see that it comes to a fast conclusion. Because if the [Petitioners] are entitled to relief, I would think they should get the relief while they are living, and not while its part of their estate[7]… I can't understand why this hasn't been completed sometime before. Donahoo Decl., Exh. D, TR 2:20-3:16.

Courts around the Country are recognizing and rejecting the tactics that 24 Hour has been employing. For example, when 24 Hour commenced its retaliatory filing of out of state Petitions, it tried to "serve" the out-of-state Petitions by either mailing them or dropping them off at counsel's office. Not only is this in sharp contrast to its employees proper service on 24 Hour's registered agent for service of process, but it was also done, (and continues to be done to this day), despite counsel's repeated communications to 24 Hour that they were not authorized to

accept service of the out-of-state Petitions and their clients had not waived service of process. Nevertheless, 24 Hour continued to mail and hand deliver the out-of-state Petitions, and filed, in some instances "proofs of service" with Courts, and in others, "Return of Service", which would indicate service of the Petitions by service of process.  As a consequence, it appeared to many courts that 24 Hour had effectuated service.   Plaintiffs' counsel, by letter to all counsel representing 24 Hour Fitness in the Out-of-State Petitions, urged 24 Hour to provide a complete procedural record to the Courts it had filed Petitions in and to cease claiming that service was effectuated, and provided legal authority for their position that service of process on the Respondents was required.[8]  Donahoo Decl., ¶ 10, subparagraph (mm), Exh. M.

In the first Court to address the service issues, the Middle District of Florida, Hon. Corrigan, in *24 Hour Fitness v. Rodifer*, MDFL Case No. 3:11-cv-1238-J-32MCR ("MDFL – *Rodifer*"), issued a Scheduling Order on December 23, 2011, that specifically provided that in **bold** 24 Hour was to utilize service of process for its Petition.   Donahoo Decl, ¶ 10, subparagraph (nn), Exh. N, MDFL – *Rodifer* Doc 7.  The next Court was the Middle District of

---

[8] Specifically, the letter stated:

> Absent circumstances not present here (e.g., a bankruptcy case, or evidence of a person evading service), the Courts have stated that service on counsel for a party in one action of a different case, does not constitute service on the client within the meaning of the FRCP, because it is not one of the proscribed methods of service, and there is no implied authority to accept service of documents in other cases present.  *See Kruska v. Perverted Justice Found.,* 2009 U.S. Dist. LEXIS 112892, *3, 5-6 (D. Ariz. 2009) (plaintiff argued that defendant's attorney had been retained by defendant in the pending case, that the attorney had received service of all filings with the court, and that the attorney had filed multiple motions and responses on behalf of the defendant; but the Court found service to be improper because the attorney was not an authorized agent for service of process), citing *Grandbouche v. Lovell,* 913 F.2d 835, 837 (10th Cir. 1990), *Ransom v. Brennan*, 437 F.2d 513, 518-19 (5th Cir. 1971), *Schultz v. Schultz,* 436 F.2d 635, 639-40 (7th Cir. 1971) (general grant of authority to attorney insufficient to imply authority to receive process), *Santos v. State Farm Fire & CAs. Co*., 902 F.2d 1092, 1094 (2d Cir. 1990) (no basis for inferring that client had authorized attorney to accept service for him), and *United States v. Ziegler Bolt & Parts Co.,* 111 F.3d 878, 881 (Fed. Cir. 1997) ("the record must show that the attorney exercised authority beyond the attorney-client relationship, including the power to accept service.")

Florida, Hon. Dalton, Jr., in *24 Hour Fitness v. Shafer*, MDFL Case No. 3:11-cv-1212-J-37JBT ("MDFL – *Shafer*"), issued a scheduling Order on January 13, 2012, that specifically provided that in **bold** 24 Hour was to utilize service of process for its Petition.   Donahoo Decl, ¶ 10, subparagraph (oo), Exh. O, MDFL – *Shafer* Doc 7.   The next Court was the District of Kansas. Hon. Crow, in *24 Hour Fitness v. Ramirez* DKS Case No. 12-2038-SAC ("DKS – *Ramirez*"), issued a Memorandum and Order on February 1, 2012, that specifically provided that under 9 U.S.C. § 4, FRCP 4, and case authority, that, in essence, 24 Hour must personally serve the respondent and issued an OSC re same.   Donahoo Decl, ¶ 10, subparagraph (pp), Exh. P, DKS – *Ramirez* Doc 7.   In response 24 Hour did personally serve Mr. Ramirez, and it provided a response to the Kansas Court's OSC, which, in essence laid attacks at Plaintiffs' counsel, but did not thing to distinguish the Kansas Court's cited legal authority, nor Plaintiffs' counsel's legal authority provided by letter to it.   Donahoo Decl., ¶ 10, subparagraph (pp).

As noted earlier, most recently, the Western District of Washington has *sua sponte* Ordered 24 Hour to amend all 51 of its Petitions because it has failed to properly allege jurisdiction.   Specifically, in *24 Hour Fitness USA, Inc. v. Shelly Gorden*, C11-2039RSM (W.D. Wash. 2012) ("WDWA – *Gorden*"), the Western District of Washington—the District, out of all 21 out-of-California Districts, in which 24 Hour has filed the *most* Petitions against claimants (approximately 51)—has, on its own motion, issued an Order Re: Jurisdiction ("Washington Order") on all of 24 Hour's Petitions filed against its employees there ("W.D. Washington Petitions"), and which W.D. Washington Petitions are the subject of (1) Petitioner's 273 Related ND Cal Petitions filed in the Northern District of California, (2) Plaintiffs' Preliminary Injunction Motion filed in the Northern District of California, and (3) 24 Hour's omnibus Motion to Transfer filed in the Northern District of California, wherein, as noted in the introduction, the W.D. Washington Court found as to all of 24 Hour's W.D. Washington Petitions: "By filing a petition to compel arbitration in this district [W.D. Washington], petitioner [24 Hour] has threatened to create the exact situation of paralysis to which Judge Conti's remonstration was directed."   Exh. L, Washington Order 3:15-16.

By way of background, the Order Show Cause in Washington was issued on the basis that it determined from the face of the W.D. Washington Petitions that 24 Hour had failed to properly invoke the jurisdiction of that Court.  Exh. L, Washington Order 1:22-23.  The WDWA Court concluded that 24 Hour's response to the OSC setting forth 24 Hour's theories regarding jurisdiction fail to actually cure the defects in the petitions themselves.  Exh. L, Washington Order 1:25-25.  To provide context for the above excerpt, the Washington Order made the additional relevant findings and conclusions:

(1)     According to the allegations of the complaint [petition], respondent is neither failing, neglecting, nor refusing to arbitrate.  Instead, she has herself sought to compel arbitration in the Northern District of California, by filing for arbitration with JAMS in San Francisco, and by filing a petition to compel that arbitration there.  Exh. L, Washington Order 2:16-20

(2)     Judge Conti's *rationale* in reaching the conclusion was that to hold otherwise would create "a state of paralysis" "in which Moving Plaintiffs' claims could never be adjudicated until one party caved to the other's venue demands".  Exh. L, Washington Order 3:6-14;

(3)      "By filing a petition to compel arbitration in this district [W.D. Washington], petitioner [24 Hour] has threatened to create the exact situation of paralysis to which Judge Conti's remonstration was directed.   The individuals who filed petitions to compel arbitration the California Court did so after initiating an arbitration proceeding before JAMS in that district, to which 24 Hour Fitness refused to respond.  Respondent [employee] has thus not simply expressed a willingness to arbitrate in California, she has actually filed a demand there."  Exh. L, Washington Order 3:15-21.

(4)     24 Hour has until February 27, 2011 to file amended Petitions that provide a proper jurisdictional basis or they would be dismissed.  Exh. L, Washington Order 4:7-8.

24 Hour's present Petition here is substantively identical and thus suffers from the exact same procedural defects as those in the WDWA cases.  Consequently, 24 Hour's instant Petition should be dismissed.

### C.  Additional Facts Provided by Respondent Militate Against Proceeding to Arbitration in This District.

Arbitrating in California, in the state of 24 Hour Fitness's corporate headquarters, would not burden or inconvenience Mr. Boyd.  Mr. Boyd spends considerable time in California. Declaration of Roderick Boyd In Opposition to Petition to Compel ("Boyd Decl.") ¶ 4.  Mr. Boyd wishes to arbitrate his claims in the Northern District of California with other opt-in claimants and where her claims against 24 Hour have been pending for many years, in the district where 24 Hour is headquartered, and where other claimants' claims have been ordered to arbitrate.  Boyd Decl., ¶¶ 6-7.

### 3.  <u>Additional Arguments</u>.

### A.  This Case Should Be Stayed Under the First-Filed-Case Doctrine.

Under FRCP Rule 65, "[w]hen a district court has jurisdiction over all parties involved, it may enjoin later filed actions." *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843-44 (9th Cir. 1986); *United States v. Oregon*, 657 F.2d 1009, 1016 n. 17 (9th Cir. 1981). Moreover, "[a]bsent special circumstances, the first case should proceed while the second case is enjoined." *Broadcom Corp. v. Qualcomm Inc.*, 2005 U.S. Dist. LEXIS 45829, *8 (C.D. Cal. Sept. 26, 2005); *Bryant v. Oxxford Express, Inc*., 181 F. Supp. 2d 1045, 1050 (C.D. Cal. 2000) (enjoining defendant from prosecuting second action); see also *Decker Coal Co*., 805 F.2d at 844 ("trial court exercised sound judicial discretion in enjoining the later filed Illinois action."). "[T]his 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems, Inc. v. Medtronic, Inc*., 678 F.2d 93, 94-95 (9th Cir. 1982). It is a doctrine that enables courts "[t]o conserve judicial resources and avoid conflicting rulings." *Northwest Airlines, Inc. v.*

*American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). It does not require identical parties or issues—only a "substantial overlap" between two actions. *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

### (1)   The "First-Filed" Court Is Supposed To Determine Proper Forum Issues Under The First-To-File Rule.

It is well-settled that "[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." *Smith v. M'Iver*, 22 U.S. 532, 534 (1824); *Pacesetter*, 678 F.2d at 96 ("the court in the first-filed action" should resolved proper forum issue); *Martin v. Geltech Solutions, Inc.*, No. 09-04884 CW, 2010 WL 2287476, at *2 (N.D. Cal. June 4, 2010) ("The court with the first-filed action should . . . decide whether an exception to the first-to-file rule applies."); *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) ("Where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case."); see also *Meru Networks, Inc. v. Extricom Ltd.*, No. C 10-02021 RMW, 2010 WL 3464315 (N.D. Cal. Aug. 31, 2010) (deferring to first-filed court to decide proper venue); *USA Scientific, LLC v. Rainin Instr., LLC*, No. C 06-4651 SBA, 2006 WL 243334927 (N.D. Cal. Nov. 16, 2006) (deferring to first-filed forum to resolve proper forum issue).

### (2)   The "First-Filed" Court Should Retain Jurisdiction And Enjoin The Second Action, Absent "Compelling Circumstances".

#### (a)   The three factors justifying enjoining are strongly present.

The "first-to-file" rule embodies the principal of federal comity.  *Peak v. Green Tree Financial Svcs. Corp.*, 2000 U.S. Dist. LEXIS 9711 at *3-4 (July 7, 2000) (citations omitted) (Hon. Samuel Conti).  The doctrine "is designed to promote judicial efficiency by avoiding any unnecessary burden on the federal judiciary and by avoiding duplicative or conflicting judgments." *Id.*

There is a "strong presumption . . . that favors the forum of the first-filed suit under the first-filed rule.'" *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949,

957 (N.D. Cal. 2008) (citation omitted). "The prevailing standard is that 'in the absence of compelling circumstances' the first-filed rule should apply." *Northwest Airlines*, 989 F.2d at 1005 (citations omitted). It is a simple matter to determine whether the first-to-file rule applies, so as to shift the burden to the defendant to avoid the rule. "In applying the first-to-file rule, a court looks to three threshold factors:

> (1) the chronology of the two actions;
>
> (2) the similarity of the parties; and
>
> (3) the similarity of the issues.

*Martin,* 2010 WL 2287476, at *1 (citation omitted).

"Indeed, by granting an injunction in this context, the court furthers the general policy against multiplicity of litigation in this context, the court furthers the general policy against multiplicity of litigation embodied in FRCP 13(a) itself." 6 Charles A. Wright, Federal Practice and Procedure § 1418 at p. 145-6 (2d ed. 1990). Because of the paramount importance the first-to-file- rule plays in promoting judicial efficiency, it "should not be disregarded lightly". *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979).

The facts here meet the requirement for application of the first-to-file rule in every respect and thus will result in an injunction against 24 Hour from prosecuting this case. *Beauperthuy* was filed nearly six years ago, on February 1, 2006. All of the Related ND Cal Petitions, including Respondent's, and were filed as new cases on December 5, 2011. All of 24 Hour's out-of-state Petitions, including this one, were filed <u>after</u> December 5, 2011. All of the issues are the same. 24 Hour's Petitions, including this one, even attach and incorporate Plaintiffs' Demands and Claims for Arbitration to their Petitions and they are seeking the exact same relief as that sought in the Related ND Cal Petitions, an Order compelling arbitration, but in a different forum.

> (b)   *None of the typical "compelling circumstances" are present.*

Because all three factors are met for the first-to-file rule, "the party objecting to jurisdiction in the first-filed forum [must] carry the burden of proving 'compelling

circumstances' to warrant an exception to the first-filed rule." *Manuel v. Convergys Corp*., 430 F.3d 1132, 1135 (11th Cir. 2005). And, there is a strong presumption that plaintiff's choice of forum will not be disturbed. *In re American Continental Corporation/Lincoln Sav. & Loan Securities Litigation*, 102 F.3d 1524, 1545 (9th Cir. 1996).

And, as Judge Conti has recognized, the "compelling circumstances" under which an exception might be made are typically "[1] bad faith, [2] anticipatory suit and [3] forum shopping." *Peak*, 2000 U.S. Dist. LEXIS 9711 at *6, citing *Alltrade, Inc. v. Uniweld Prods., Inc*., 946 F.2d 622, 628 (9th Cir. 1991).

As with whether or not Plaintiffs, including Respondent here, have made their initial showing for enjoining the other cases, the facts regarding these "compelling circumstances" are also very basic. Because Plaintiffs filed their Related ND Cal Petitions upon receiving an Order from Judge Conti stating that employees subject to the 2001 Agreement (1) could properly have an order compelling arbitration in this District due to Defendants' failure to arbitrate in the Northern District (2) and that they had substantially complied with arbitration provision when they submitted their Demand and Claims after decertification, there is no basis for any claim of bad faith, anticipatory suit or forum shopping by Plaintiffs, including Respondent.

In fact, this might be the case where it would be doubly wrong to allow any exception circumstances for 24 Hour, because under the facts present here, the traditional factors are actually demonstrable against 24 Hour here. Here, there is evidence of bad faith, anticipatory suit and, especially, blatant forum shopping by 24 Hour. 24 Hour has made it abundantly clear that it filed the out-of-state actions to usurp Judge Conti's jurisdiction, declaring a "war" for their selected venue. Donahoo Decl., ¶ 5, Exh. A.

And the petitions themselves, including this one, demonstrate that 24 Hour is seeking to re-litigate in different forums issues related to all 273 Petitioners already decided by Judge Conti. 24 Hour's out-of-state petitions specifically allege that the FLSA claims of Plaintiffs, including Respondent, are barred by the two or three year statute of limitations in the FLSA (Instant Doc 1, page 2, fn 1), when Judge Conti has already issued an order equitably tolling the claims periods

22

of the Petitioners back to 1998 and 1999.  Exh. E, Doc. 124, p.16-19; Doc. 190, p.13-16.  24 Hour's out-of-state Petitions, including this one, also say that Plaintiffs' claims are barred because they did not comply with the Court's decertification order because they did not "properly" demand arbitration within 30 days.  Instant Doc 1, page 2, fn 1.  But, Judge Conti already found that Plaintiffs' submission and service of those Demands on 24 Hour in the Northern District  did constitute proper compliance with Judge Conti's Order.  Exh. H, Doc 457.

Finally, if 24 Hour had any other arguments as to why the arbitrations subject to the 2001 Agreements should not proceed in Northern District of California, it could have and should have raised them the first time this issue was decided.  Because it did not, it can be inferred that 24 Hour does not have any exceptional circumstances justifying its alleged right to proceed in other states versus Plaintiffs' rights to proceed in the Northern District of California, or that any present argument they make is not likely to be a strong one.  Indeed, to date, 24 Hour has not provided any such arguments based upon admissible evidence in any filing in *Beauperthuy* or the instant action.

### B.     24 Hour Has No Affirmative Claims Against Respondent, Respondent Has Not Refused to Arbitrate, and 24 Hour Has Waived Its Right to Make Any Argument Based Upon the Arbitration Agreement.

Case law is uniform that the FLSA is a remedial one-way statute, allowing only affirmative claims to be made by employees against employers; there is no cause of action an employer can receive and no affirmative relief.  *Wheeler v. Hampton Twp.*, 399 F.3d 238, 244 (3d Cir. 2005) ("there is no cause of action for employers in the FLSA…. The FLSA is a shield for employers, not a sword…. [a] defensive litigation posture [is] required of employers under the FLSA"), citing 29 U.S.C. § 216.  In other words, an employer cannot "sue" an employee under the FLSA.  Therefore, it is unclear whether logic or case law would support Defendants' initiation of litigation against an employee in the out-of-state cases, including this one, where there is no current civil litigation and where the employee has already demanded arbitration in another federal judicial district.  True, some courts have ordered arbitration to proceed when

initiated by the employer, but none have been located that are an attempt to arbitrate an employee's FLSA claims against them where an employee has already agreed to arbitrate and has no active litigation case against the employer.

Allowing 24 Hour to argue for and then receive an Order compelling arbitration would result in an inequitable result in that 24 Hour argued in opposition to Plaintiffs' Motion to Compel, that under the FAA, no order can be issued unless there has been an unambiguous refusal to arbitrate, which, according to 24 Hour, has not occurred here, because neither side as refused to arbitrate, they merely dispute the location of the arbitration.  Doc 452, p. 8-14.  True, 24 Hour lost that argument before Judge Conti, but 24 Hour has since appealed Judge Conti's ruling, and will therefore make the same argument again, this time to the Ninth Circuit.  Doc 475.

Finally, 24 Hour's entire basis for Petitioning to compel arbitration here is that it has the right to compel arbitration pursuant to its agreement with Respondent to arbitrate.  But, as noted earlier, it has already been established that 24 Hour has waived a right to make any such claim.  Judge Conti found years go: "Plaintiffs have repeatedly requested that Defendants arbitrate their dispute[;] Defendants accepted once, only to soon thereafter stymie the process…." and that:

> Plaintiffs have been forced to deal with defendants' confusing, contradictory, and time-consuming strategic maneuvering purportedly based on the [2001] Arbitration Agreement but which involve simultaneous explicit refusals to compel arbitration.  The unnecessary delay and expense this has caused has affected not only Plaintiffs but also the various courts and arbitration institutions which have been involved.  Exh. F, Doc 66, 9:27-10:4, 10:18-25.

Judge Conti concluded that: "in the interests of justice and efficient resolution of the parties' disputes [the Court] hereby finds that Defendants have waived their right to compel arbitration and are thus barred from making any arguments on the basis of such a right."  Exh. F, Doc 66, 8:23-9:4, 9:11-18.

Moreover, the Western District of Washington has already determined on an identical Petition filed there that 24 Hour's Petitions fail because they cannot properly invoke the

jurisdiction of the Federal Courts, because Respondents there, like Respondent here, has not refused, neglected or failed to arbitrate.

Finally, there is no venue selection clause in the 2001 24 Hour arbitration agreement, so Respondent's prior demand for arbitration, and later Petition to Compel Arbitration, both in the Northern District of California were properly filed.

### C.   24 Hour Cannot Enforce Its Arbitration Agreement Against Respondent Because Under Controlling Case Precedent, Its Unilateral Power to Amend Its Arbitration Agreement, Renders it Illusory.

Respondent's circumstances here as a former employee of 24 Hour alleging an employment dispute vis-a-vis 24 Hour and its arbitration provision are *identical* to Mr. Carey's circumstances vis-a-vis 24 Hour and its arbitration provision that were at issue, and decided against 24 Hour first by the District Court (Hon. Atlas), and then, as affirmed on appeal to the Fifth Circuit.

In the *Carey* case:

- Mr. Carey was a former sales representative for 24 Hour;
- during Mr. Carey's period of employment, 24 Hour issued an employee Handbook;
- one of the sections in the Handbook, entitled "Arbitration of Disputes," provided that all employment-related disputes, whether initiated by an employee or by 24 Hour, would be "resolved only by an arbitrator through final and binding arbitration";
- it specified that disputes under the FLSA were among those subject to the mandatory arbitration policy and provided that disputes cannot be brought as class actions or in representative capacities;
- the policy also expressly invoked the FAA as its governing authority;
- Mr. Carey signed the Employee Handbook Receipt Acknowledgment (the "Acknowledgment"), indicating that he had received the Handbook;

- the Acknowledgment reiterated the arbitration policy: "I agree that if there is a dispute arising out of my employment as described in the 'Arbitration of Disputes' policy, I will submit it exclusively to binding and final arbitration according to its terms";

- the Acknowledgment also stated that the terms of the Handbook are subject to change ("Change-in-Terms Clause"): "I acknowledge that, except for the at-will employment, 24 Hour Fitness has the right to revise, delete, and add to the employee handbook. Any such revisions to the handbook will be communicated through official written notices approved by the President and CEO of 24 Hour Fitness or their specified designee. No oral statements can change the provisions of the employee handbook."

*Carey v. 24 Hour Fitness, USA, Inc.*, 2012 U.S. App. LEXIS 1339, 1-3 (5th Cir. Tex. Jan. 25, 2012).[9]

Respondent here:

- Respondent was a former personal trainer and manager for 24 Hour and was employed by 24 Hour from February 2003 to August 2004.  (Boyd Decl., ¶ 2);

- during Respondent's period of employment, 24 Hour issued an employee Handbook (Boyd Decl., ¶ 5, Exhibit 1);

- one of the sections in the Handbook, entitled "Arbitration of Disputes," provided that all employment-related disputes, whether initiated by an employee or by 24 Hour, would be resolved by way of "final and binding arbitration" which "means that a neutral arbitrator, rather than a court or jury, will decide the dispute."  Boyd Decl., Exhibit 1; Donahoo Decl., Exh. G [Exhibit A to the Prescott Decl.]  This same provision is attached as Exhibit C to Ms. Hayward's Declaration in support of 24 Hour's Petition;

---

[9] Carey's counsel is specially appearing on behalf of Respondent.

- it specified that disputes under the FLSA were among those subject to the mandatory arbitration policy and provided that disputes cannot be brought as class actions or in representative capacities (*Id.*);

- the policy also expressly invoked the FAA as its governing authority (*Id.*);

- Respondent signed the Employee Handbook Receipt Acknowledgment (the "Acknowledgment"), indicating that she had received the Handbook (Boyd Decl., ¶ 5, Exhibit 2; Donahoo Decl., Exh. G [Exhibit D to the Prescott Decl.]);

- the Acknowledgment reiterated the arbitration policy: "I agree that if there is a dispute arising out of my employment as described in the 'Arbitration of Disputes' policy, I will submit it exclusively to binding and final arbitration according to its terms" (Boyd Decl., Exhibit 2; Donahoo Decl., Exh. G [Exhibit D to the Prescott Decl.]);

- the Acknowledgment also stated that the terms of the Handbook are subject to change ("Change-in-Terms Clause"): "I acknowledge that any revisions to the handbook will be communicated through official written notices approved by the President/CEO of 24 Hour Fitness or his or her specified designee. The President/CEO of 24 Hour Fitness has the ability to adopt any revisions to the policies in this handbook." (Boyd Decl., ¶ 6, Exhibit 2; Donahoo Decl., Exh. G [Exhibit D to the Prescott Decl.]).

After Mr. Carey's employment ended, he filed this class action against 24 Hour, alleging that it had violated the FLSA by failing to adequately compensate him and other similarly-situated employees for overtime work. 24 Hour moved the district court to stay its proceedings and to compel arbitration of Mr. Carey's claim. In his response to that motion, Mr. Carey argued that the arbitration agreement was illusory because 24 Hour retained the right to unilaterally amend the agreement.  The district court agreed with Mr. Carey, holding that the arbitration agreement was illusory. It therefore denied 24 Hour Fitness's motion to stay and compel arbitration. 24 Hour appealed.  *Carey,* 2012 U.S. App. LEXIS 1339 at 3.

Under Texas law, an arbitration clause is illusory if one party can "avoid its promise to arbitrate by amending the provision or terminating it altogether."  *Carey* at 5, citing *In re 24R, Inc.,* 324 S.W.3d 564, 567 (Tex. 2010).  "Put differently, where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset. The crux of this issue is whether 24 Hour Fitness has the power to make changes to its arbitration policy that have retroactive effect, meaning changes to the policy that would strip the right of arbitration from an employee who has already attempted to invoke it.  *See Torres v. S.G.E. Mgmt., LLC*, 397 F. App'x 63, 68 (5th Cir. 2010) (unpublished) (summarizing several Texas and Fifth Circuit cases as "suggest[ing] that the lack of a notice window before any elimination of the [arbitration] clause becomes effective *and the ability to amend the agreement retroactively so as to avoid any promise to arbitrate* are factors indicating that the agreement may be illusory" (emphasis added))."  *Carey* at 6.

The *Carey* court then addressed the issues as follows: Carey contended that the Change-in-Terms clause would allow 24 Hour to unilaterally avoid its promise to arbitrate by modifying the Handbook, and that if an employee sought to invoke the provision, nothing would prevent 24 hour from changing the agreement and making the changes applicable to that dispute if it determined that arbitration was no longer in its interest (*Carey* at 8-9); but, then 24 Hour countered that the handbook "should not be read to allow" retroactive changes in its policy when it does not expressly provide for retroactivity.  Not only did the Fifth Circuit reject that claim (*Carey* at 9-10) and found the provision illusory and unenforceable by 24 Hour (*Carey* at 19) but as a matter of fact, 24 Hour's entire position with regard to the arbitration with its employees in the present dispute is that all of an employees' claims, which for the *Beaperthuy* opt-in and named Plaintiffs, go back to 1998 and 1999 (see Respondent's Demand and Claim ¶¶ 11-16, attached as Exhibit A to Ms. Hayward's Declaration) must be arbitrated under the version in effect when the left their employ.  (See Petition, page 2 Section 11.B. ("Because Claimant's

employment at 24 Hour Fitness ended during the period covered by the 2001 Arbitration Agreement, Claimant is covered by that version of the agreement")).

There are multiple briefings and declarations filed in *Beauperthuy* in which 24 Hour makes this contention.  In addition, from a review of the over 300 Petitions filed across the Country, confirms that irrespective of when an employee's claims arose, 24 Hour is demanding that whichever of the 5 potential agreements was in effect when the employee left work, is the one that the employee must arbitrate under, and there are significant changes.  Some call for the FAA rules, some call for AAA rules, some call for state arbitration rules—but only if they exist. Donahoo Decl., ¶ 19.  But, most critically, 24 Hour unilaterally <u>amends its agreements</u> while collective actions have been pending against it.  Specifically, the 2005 amendment, which 24 Hour relies upon in many of its Petitions, was implemented in some unknown date in January 2005, but at that time, the *Boyce* national FLSA collective action was still pending and the *Allen* collective action arbitration for non-California employees were also still pending.  Donahoo Decl., ¶ 18.  Moreover, it was after Judge Conti called upon the Court's equity jurisprudence to apply equitable tolling to the *Beauperthuy* claimants, including Respondent herein, that 24 Hour amended its arbitration provision to give the Arbitrator the authority to resolve issues regarding timeliness or propriety of the demand, and limited the remedies available to those "at law".  See last two entries on the chart at ¶ 17 of Mr. Donahoo's Declaration showing the changes in the 2007 version of the agreement vis a vis the 2001 and 2005 versions.

Thus not only can it, and must it, be inferred from the plain language of 24 Hour's arbitration agreement, and Employee Handbook Acknowledgement, that 24 Hour has the ability to unilaterally and retroactively amend, as the *Carey* court concluded it did, but, it is an irrefutable fact that 24 Hour has indeed exercised its power.  In fact, this very Petition is an exercise of it.  Thus, 24 Hour has shown that the very situation that was determinative to the *Carey* court is present, in volumes here, in that under its unilateral amendment power:  "If a 24 Hour Fitness employee sought to invoke arbitration with the company pursuant to the agreement, nothing would prevent 24 Hour Fitness from changing the agreement and making those changes

applicable to that pending dispute if it determined that arbitration was no longer in its interest. In effect, the agreement allows 24 Hour Fitness to hold its employees to the promise to arbitrate while reserving its own escape hatch." *Carey* at 9.

///

///

///

///

///

///

///

///

///

///

///

///

///

**4.**     **Conclusion.**

For the foregoing reasons, Respondent respectfully requests that 24 Hour's Petition be denied and dismissed, or, in the alternative, that the Court issue a stay in this action for at least 90 days pending Judge Conti's resolution of the Preliminary Injunction motion and the earlier-filed Petition filed by Respondent to compel 24 Hour to arbitrate these claims in the Northern District of California, or in the alternative, that Respondent be allowed to take additional discovery into the illusory nature of the contract.

DATED this 7th day of March, 2012.

Respectfully submitted,

TRAN LAW FIRM L.L.P.

By: /s/  Trang Q. Tran
       Trang Q. Tran
       Federal I.D.:  20361
       Texas Bar Number: 00795787
       E-mail:  Ttran@tranlawllp.com
       Andrew H Iwata
       Federal I.D.:  625974
       Texas Bar Number: 24048568
       E-mail:  ahi@tranlawllp.com
       3050 Post Oak Blvd. Suite 1720
       Houston, Texas 77056
       Telephone: (713) 223-8855
       Facsimile: (713) 623-6399

                COUNSEL FOR RESPONDENT

       *PRO HAC VICE* PENDING:
       Richard E. Donahoo
       Donahoo & Associates
       440 West First Street, Suite 101,
       Tustin, CA 92780
       Tel: (714) 953-1010
       Fax: (714) 953-7777
       Email:  rdonahoo@donahoo.com

                ATTORNEY IN CHARGE

31

## **CERTIFICATE OF SERVICE**

     I CERTIFY that on March 7, 2012, the foregoing documents were served on the Parties Counsel of record via the ECF system or via electronic mail.


/S/Andrew H. Iwata

Andrew H. Iwata